E-FILED
Friday, 06 November, 2026 01:39:27 PM
Clerk, U.S. District Court, ILCD

FILED
NOV 06 2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

KATHLEEN MARTHA MOON,
Plaintiff,
v.
LES BAER SR. and
LES BAER CUSTOM, INC.,
Defendants.

Case No. 26-cv-4278

JURY DEMANDED

COMPLAINT AND DEMAND FOR JURY TRIAL

Equitable relief is sought;

Plaintiff Kathleen Martha Moon, self-represented, complains of Defendants Les Baer Sr. and Les Baer Custom, Inc., and states:

NATURE OF THE ACTION

1. Beginning before he married Plaintiff, and continuing after they married, separated and reconciled, Defendant Les Baer Sr. ("Les") secretly recorded Plaintiff's private conversations and watched her private life. He hid voice recorders in her car, in her bedroom, and in the shared cubicle area at work. He kept handwritten logs of what the recorders captured, timed to the minute and second. He paid a private investigator more than $214,000 to follow her and report to him, including on what could be seen inside her home.

2. Plaintiff did not consent to the concealed tracking devices, recording devices, or private-investigator surveillance described in this Complaint. During the January 2025 reconciliation, Plaintiff expressed concern about the concealed voice recorders and AirTags she had discovered in 2024 and wanted that conduct to stop. She did not know at that time that Les had retained private investigators. Additional concealed recording devices were later discovered in the vehicle Plaintiff drove, her bedroom, and the shared cubicle area at work. On December 26, 2025, Plaintiff listened to audio from one recorder recovered from a vehicle trunk and

recognized sounds from her bathroom, including a podcast, running shower water, dogs barking, and her voice calling to the dogs. Plaintiff examined only one recovered recorder because she was concerned that further handling or playback could alter or compromise evidence; the contents of the remaining devices have not been fully examined or independently verified.

3. This action seeks damages for those invasions of Plaintiff's privacy under the federal Wiretap Act, the Illinois Eavesdropping Act, and the common law of Illinois and Iowa. It is an action in tort only. It does not seek dissolution of marriage, maintenance, division of property, or review of any order entered in any other proceeding.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Kathleen Martha Moon is a citizen of Nevada. She has lived in Las Vegas, Clark County, Nevada since April 3, 2026, and intends to remain there. She resided in Illinois during most of the events alleged.

5. Defendant Les Baer Sr. is a citizen of Illinois. He resides in Port Byron, Illinois, and during the events alleged he worked at 1804 Iowa Drive, Le Claire, Iowa.

6. Defendant Les Baer Custom, Inc. (the "Company") is a corporation incorporated under the laws of Illinois on March 5, 1992, and registered to conduct business in Iowa as a foreign corporation under Corporation No. 345445. The Company operates from 1804 Iowa Drive, Le Claire, Iowa 52753. Its February 26, 2026 Iowa biennial report identifies the Port Byron, Illinois residence as its reported principal office. Les serves as the Company's president, secretary, treasurer, and director and directs its daily operations. Plaintiff alleges that the Company is a citizen of Illinois by incorporation and, upon information and belief, maintains its principal place of business in Iowa. Les regularly directs the Company's business from its Le Claire facility, where its manufacturing, shipping, and check-writing activities occur.

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Count V arises under 18 U.S.C. §§ 2511 and 2520, and supplemental jurisdiction over Counts I through IV under 28 U.S.C. § 1367(a) because they form part of the same case or controversy. Independently, this Court has jurisdiction over all claims under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Nevada, no Defendant is a citizen of Nevada, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Les, who resides in Illinois and committed acts alleged here in Illinois, and over the Company, which is incorporated in Illinois, lists its principal office in Illinois, and acted through Les, its president and director, in conduct directed at Plaintiff and at the Port Byron residence in Illinois.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Les resides here and all Defendants reside in Illinois for venue purposes, and under § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred at the Port Byron residence in Rock Island County. The Rock Island Division is proper because Rock Island County lies within it.

## FACTS

### A. Les placed Plaintiff under surveillance before they married.

10. Plaintiff and Les were married on June 8, 2024, in Las Vegas, Nevada.

11. Bank records produced by Quad City Bank & Trust identify 43 checks payable to Pat Burke, dated between April 8, 2024, and January 15, 2026, totaling $214,768.75. Of those, 39 checks totaling $206,554.75 were dated before Plaintiff filed for divorce on September 9, 2025, and four checks totaling $8,214.00 were dated after that filing. Two of the post-filing checks, totaling $6,721.00, were dated after Plaintiff initiated order-of-protection proceedings on

November 6, 2025. The checks bear the printed heading "LES BAER, SR. / LES BAER RACING." Plaintiff has obtained investigative reports documenting surveillance activities, but has not obtained the invoices or billing records necessary to identify the specific services associated with each payment.

12. In August 2025, Cindy Longnecker informed Plaintiff that Les had retained private investigators to follow and monitor her. On September 1, 2025, Plaintiff discovered the actual investigative reports, folders, and mailers concerning that surveillance in the dining room hutch at the Port Byron residence. Those materials document extensive surveillance involving multiple investigators, shifts, detailed observations, photographs, and reported video recordings. The Robison Group reports identify Les as the client and Plaintiff as the subject of investigations conducted April 10–19, June 3–5, September 9–13, and November 22–25, 2024. The reports describe surveillance and filming at Plaintiff's gym and inside a medical-office waiting room, as well as observations at other locations. Additional reports identify Les as the client and Plaintiff as the subject of surveillance conducted February 11–28 and March 12–18, 2025, with detailed observations of her movements and activities. Related handwritten records attributed to Les describe multiple investigators, shifts, photographs, and communications coordinating surveillance. The investigative activities extended beyond Plaintiff: investigative inquiries concerned at least two coworkers after they were observed speaking with her. Separately, investigators documented a third-party vehicle parked near Plaintiff's vehicle in the residential garage at her home and conducted a license-plate inquiry. The recovered reports represent only those investigative records Plaintiff was able to obtain; Plaintiff does not possess a complete accounting of the investigators' assignments, reports, recordings, or communications with Les.

13. Between May 30 and July 7, 2024, Plaintiff discovered multiple concealed Apple AirTag tracking devices in her purse and vehicle, including two AirTags taped inside separate pockets of her purse and another concealed in her BMW Z4. Additional tracking and recording devices were discovered in the Ford Escape driven by Plaintiff's daughter and Plaintiff's BMW, as detailed below.

14. Plaintiff never authorized or consented to Les or anyone acting on his behalf secretly recording her private conversations, tracking her movements, or conducting covert surveillance of her private activities. This lack of consent existed before Plaintiff began discovering concealed tracking devices on May 30, 2024 and continued throughout the events described in this Complaint. Plaintiff did not subsequently grant consent, expressly or implicitly, including through her reconciliation with Les in January 2025.

B. Concealed recorders in Plaintiff's car and her daughter's car, July 2024.

15. On July 6, 2024, Plaintiff discovered an Apple AirTag tracking device and a digital voice recorder concealed beneath the front passenger seat of the Ford Escape driven by her daughter. Plaintiff reported the discoveries to the Schaumburg Police Department, which investigated the matter on July 7, 2024, under Case No. SCP24-007871.

16. On July 7, 2024, at approximately 6:23 p.m., Schaumburg Police Officer Alejandro Perez personally discovered an Olympus VN-7200 digital voice recorder secured with duct tape beneath the front passenger seat of Plaintiff's 2019 BMW Z4. Schaumburg Police Evidence Technician Hooghkirk processed both Plaintiff's BMW and the Ford Escape driven by her daughter. The department documented and inventoried the recovered Apple AirTags and two digital voice recorders into its evidence-management system under Case No. SCP24-007871.

17. The digital voice recorders recovered from Plaintiff's BMW and the Ford Escape driven by her daughter were concealed beneath the vehicles' front passenger seats, in positions capable of capturing conversations occurring inside the passenger compartments. Plaintiff did not know the recorders were present and had not consented to their placement or use. The contents of the recovered devices have not yet been independently examined or verified by Plaintiff. Based on the concealed placement of the devices and the broader documented pattern of recording and surveillance, Plaintiff alleges on information and belief that the devices were placed for the purpose of secretly recording conversations inside the vehicles.

18. Following the recovery of the concealed Apple AirTags, the Schaumburg Police Department sought identifying information associated with the tracking devices from Apple. Plaintiff was subsequently informed by a Schaumburg police officer that the investigation identified Les in connection with the devices. The identifying information is redacted in the copies of the police records provided to Plaintiff. Plaintiff alleges Les's connection to the tracking devices based on the officer's communication and the circumstances of their discovery, subject to confirmation through the underlying law-enforcement and Apple records.

C. Reconciliation and Plaintiff's concerns about concealed devices.

19. Following the discovery of concealed tracking devices and voice recorders in July 2024, Plaintiff and Les lived separately and had limited contact. The parties exchanged no text messages between September 10, 2024, and January 26, 2025, according to the message records reviewed. On January 26, 2025, Plaintiff visited Les at his Port Byron residence, and the parties reconciled. On February 1, 2025, Les sent Plaintiff a text message stating, "im glad you came here sunday, you mean the world to me." Plaintiff continued residing in Schaumburg, Illinois,

and would drive to Port Byron to spend weekends with Les until she returned to live at the Port Byron residence in late May 2025.

20. On January 26, 2025, Plaintiff visited Les at the Port Byron residence to discuss whether their marriage could be saved. Plaintiff expressed her concerns about the concealed voice recorders and AirTags discovered in 2024 and made clear that she wanted that behavior to stop. The parties agreed to reconcile. Unbeknownst to Plaintiff, an investigative report identifying Les as the client and Plaintiff as the surveillance subject bears a "Date Ordered" of January 22, 2025—four days before their reconciliation. Les issued checks totaling $11,000 payable to private investigator Pat Burke on February 4 and February 10, 2025. The investigative report documents surveillance beginning February 11, 2025. Plaintiff did not learn of the private-investigator operation until August 2025.

21. Plaintiff's decision to reconcile with Les in January 2025, resume visiting him, and subsequently return to the marital residence did not constitute consent to concealed recording, electronic tracking, or surveillance by private investigators. Plaintiff did not authorize Les or anyone acting on his behalf to secretly record her private conversations, track her movements, or monitor her private activities.

D. Les recorded Plaintiff and logged what the recorders captured, 2025.

22. During 2025, Les maintained handwritten notes documenting Plaintiff's conversations, movements, and private activities, including purported transcriptions with minute-and-second time entries and information received from private investigators. Cindy Longnecker, Les's assistant and office manager at Les Baer Custom, Inc., personally observed aspects of these activities and began photographing surveillance-related materials at the Company's office in April 2025. The photographs she preserved represent only a portion of the

materials reportedly maintained there. Her observations of Les's activities, equipment purchases, and involvement in the surveillance operation are described more fully below.

23. During Plaintiff's birthday weekend of February 21–23, 2025, which she spent with Les at the Port Byron residence following their reconciliation, handwritten notes attributed to Les documented her presence and activities. The notes, headed "Garage Friday nite Feb 21st and Sat Feb 22, Sunday Feb 23," establish a starting point of 10:00 p.m. on February 21 and contain elapsed-time entries describing arrivals, movements into the residence, sounds in the garage, and words attributed to Plaintiff. Separately, an investigative surveillance report documents Plaintiff's travel from Schaumburg toward Port Byron on February 21 and her return to Schaumburg on February 23. Les subsequently sent Plaintiff a text message referring to her birthday weekend at his residence. During Plaintiff's visit to the Port Byron residence on or about April 4–6, 2025, additional handwritten notes attributed to Les recorded minute-and-second elapsed-time entries and words attributed to Plaintiff and another person, consistent with notes made while reviewing audio recordings. The notes include the statements "This is as she's comin here!!" and "0 = 10:00pm Friday Nite." Plaintiff disputes the accuracy of the purported transcriptions.

24. Handwritten notes attributed to Les for Thursday, April 24, 2025, bear the heading "April 24th Thursday Pat 7-10," identifying a scheduled surveillance period associated with private investigator Pat Burke. The same page contains the circled notation "Last Day Recorder Works" and observations concerning Plaintiff's activities, including her being outside and the position of window blinds. The notes demonstrate that Les was documenting investigator schedules and the reported operation of recording equipment while continuing to monitor Plaintiff's activities.

25. On May 27, 2025, Cindy Longnecker photographed a bag containing four Olympus VN-7200 digital voice recorders at the offices of Les Baer Custom, Inc. The recorders bore handwritten labels identifying specific locations and dates: "Hutch, May 2–4"; "May 2–4, Kathy's Bedroom"; "May 2–4, Dresser, LB Bedroom"; and "Garage, May 2 to May 4." Plaintiff was visiting Les at the Port Byron residence during that weekend. Earlier photographs taken May 16, 2025, show Olympus recorders and batteries in Les's office drawer. A photograph taken August 25, 2025, shows another recorder bearing a handwritten label referring to the Bronco Raptor and April 20, 2025. Plaintiff had also visited the Port Byron residence during the April 18–20 weekend. The labels associate the recording devices with Plaintiff's private living spaces, the residence, and a vehicle she used, during periods when she was present.

26. Handwritten notes attributed to Les for May 20, 2025, record Plaintiff starting her vehicle at approximately 3:44 p.m., accompanied by a boxed notation stating, "Got recording at this time … 3:44pm." The notes then document Plaintiff's movements to two restaurants and record when her vehicle was turned off upon returning to her Schaumburg residence at approximately 4:29 p.m. The combination of a reference to obtaining a recording and detailed vehicle-movement entries indicates that Les was documenting Plaintiff's activities through more than one form of monitoring. The source of the vehicle-status information and the contents of the referenced recording have not yet been independently established.

27. Plaintiff and Les maintained separate bedrooms at the Port Byron residence. Plaintiff slept in her own bedroom, while the parties' intimate encounters occurred exclusively in Les's bedroom. During Plaintiff's May 2–4, 2025 visit, the parties engaged in intimate activity in Les's bedroom. Photographs subsequently taken at the Company's office show digital voice recorders bearing handwritten labels identifying both bedrooms and those dates. Plaintiff later

discovered two concealed voice recorders in her own bedroom, where no intimate activity occurred. Plaintiff had no knowledge of the devices and did not consent to their placement or use in either bedroom. Based on the labeled devices and surrounding circumstances, Plaintiff alleges on information and belief that recording equipment was placed in the bedrooms during her visits. The contents of the labeled devices have not been independently verified.

28. On August 14, 2025, Cindy Longnecker discovered a concealed digital voice recorder at Plaintiff's workplace at Les Baer Custom, Inc. This discovery prompted Plaintiff to search for additional recording devices, leading her to discover a concealed recorder on the driver's side of the Ford Bronco Raptor she was driving. On August 20, 2025, Ms. Longnecker discovered a second workplace recorder in the same concealed location as the first. On August 21, 2025, Plaintiff discovered a concealed voice recorder behind the headboard of her bed at the Port Byron residence. On August 24, 2025, Plaintiff discovered a second concealed recorder in her bedroom. Plaintiff had not authorized or consented to the placement or use of these devices.

29. On December 26, 2025, Plaintiff discovered two digital voice recorders in the trunk of a car parked in the garage at the Port Byron residence. One recorder had rolled yellow notepaper secured to it with a rubber band, containing extensive handwritten notes, including time entries and references to where the recorder had been placed. Plaintiff reported these discoveries to Investigator Brent A. Mendoza of the Rock Island County Sheriff's Office by email on December 27, 2025. Plaintiff listened to audio on one recovered recorder and recognized sounds from her own bathroom activities, including running shower water, dogs barking, her voice calling to the dogs, and an episode of the New Heights podcast she had been listening to. Plaintiff had not consented to recording these activities. Plaintiff believes the handwritten notes associated with the recorder document portions of the recording, but the

relationship between the notes and the audio has not yet been independently verified. Plaintiff's YouTube watch history contains entries for the identified podcast episode on August 16 and October 9, 2025, while she resided at the Port Byron home. The precise recording date and original placement of the device remain to be established.

E. Les recorded Plaintiff at her workplace.

30. Plaintiff assisted at the offices of Les Baer Custom, Inc., on one occasion in 2024 and began working there full time in June 2025. Plaintiff and Cindy Longnecker worked at facing desks separated by a shared cubicle partition. The office had no separate employee break room, so Plaintiff and Ms. Longnecker routinely ate meals, took breaks, and held personal conversations at their workstations. When Les was absent, they sometimes discussed private matters that they did not intend or expect him or others to overhear or secretly record. Neither Plaintiff nor Ms. Longnecker was aware that recording devices had been concealed near their work areas.

31. On August 14, 2025, Cindy Longnecker discovered a digital voice recorder concealed behind a filing cabinet beneath her side of the shared cubicle partition at Les Baer Custom, Inc. The recorder was positioned near the partition separating Plaintiff's and Ms. Longnecker's workstations, where it was capable of capturing conversations between them. Discovering it required inspection of a concealed space beneath the desk. Following that discovery, Plaintiff and Ms. Longnecker began searching the office for additional recording devices. On August 19, 2025, a search of the shared cubicle area, including the location where the first recorder had been found, revealed no additional recorder. On August 20, 2025, Ms. Longnecker discovered a second digital voice recorder concealed in the same location. Ms. Longnecker photographed the second recorder in its discovered position on August 20, 2025, at

approximately 3:49 p.m. The photograph shows an illuminated red-orange indicator on the device. Neither Plaintiff nor Ms. Longnecker had consented to the secret recording of their workplace conversations.

32. During her employment at Les Baer Custom, Inc., Cindy Longnecker was instructed by Les to purchase recording and surveillance-related equipment using her personal credit card, for which she reports receiving cash reimbursement from Les. According to Ms. Longnecker, she also assisted Les with activating Apple AirTags. Amazon order-history screenshots identify orders dated March 18, 2025, for multiple Blink indoor and outdoor camera products. Ms. Longnecker reported that Les intended the cameras to be used to monitor Plaintiff at the residence. The Blink cameras were ordered but were not installed or used to record Plaintiff. These purchases and related activities occurred in connection with instructions Ms. Longnecker reports receiving from Les while employed at the Company.

33. Cindy Longnecker personally observed Les spending substantial periods of his working day at the offices of Les Baer Custom, Inc., listening through wired earphones to audio recordings concerning Plaintiff and preparing detailed handwritten notes containing minute-and-second time entries. Ms. Longnecker also observed Les reviewing surveillance-related materials, communicating with private investigators, and maintaining recording devices, handwritten notes, photographs, and materials concerning Plaintiff at the Company office. On April 9, 2025, she photographed Les's smartphone displaying a message thread identified as "Pat Burke" with nine photograph attachments. According to Ms. Longnecker, Les repeatedly discussed changing and retrieving recorders, listening to additional recordings, and sounds he claimed to hear on them. He described purported conversations between Plaintiff and unidentified men, including repeated declarations of love, and discussed

extensive information he attributed to private investigators about Plaintiff's activities and appearance. Plaintiff expressly disputes that the purported conversations occurred. These allegations concern what Les reportedly told Ms. Longnecker, not the truth or accuracy of his descriptions.

34. In April 2025, Cindy Longnecker photographed personal mail and financial correspondence belonging to Plaintiff at the offices of Les Baer Custom, Inc., including a check payable to Plaintiff and a bank PIN letter addressed to her. The check bore handwritten notations attributed to Les, previously transcribed as "wz in her purse, got out april 25" and, separately, "for lead's Sunday at work." Plaintiff understood the reference to "april 25" to mean April 2025, rather than April 25. Plaintiff had not authorized Les to remove or retain the check or her private financial correspondence, and alleges on information and belief that he obtained the check from her purse and kept it at the Company office without her permission.

35. Cindy Longnecker reported the discovery of concealed workplace recording devices to the Le Claire Police Department. The matter is identified in Plaintiff's records as Le Claire Police Department Case No. 25-9430. The precise reporting date and the contents of the police report remain to be confirmed.

F. Les directed investigators to watch Plaintiff, including inside her home.

36. A written surveillance report identifies Les as the client and gives a "Date Ordered" of January 22, 2025, four days before the visit at which the parties reconciled. A surveillance-log page, which Plaintiff found and photographed at the Port Byron residence on September 1, 2025, contains an entry dated Monday, February 3, 2025, describing investigators canvassing the tenant parking lot and garage of Plaintiff's Schaumburg apartment and noting that the window treatments to her patio door were closed. The report bearing the January 22 order

date separately documents investigative activity beginning February 11, 2025, and continuing on more than twenty days through March 18, 2025. The investigators repeatedly observed the patio door and window blinds of Plaintiff's residence, identified a male coworker who walked out with her at work, and compiled his home address and several of his telephone numbers. The report states that Plaintiff was observed inside her residence on March 14, 2025, at 9:44 p.m. and on March 17, 2025, at 9:05 p.m. It also records investigators observing Plaintiff's car inside the tenant garage of her apartment building. The reports describe the building as having a "secured parking garage," and in 2025 investigators repeatedly "canvassed the tenant parking lot and garage" to confirm that her car was there. The garage was for residents only and opened with a resident's garage-door opener. The investigators were not residents of the building and had no authorization to enter the residents-only parking garage. During Plaintiff's tenancy, the garage door was frequently broken and remained open when malfunctioning. Plaintiff alleges, on information and belief, that the investigators entered the garage during periods when the door was not functioning properly to determine whether her vehicle was parked inside. A cover letter dated March 24, 2025, addressed to Les at the Company's office, states that the surveillance assignment regarding Plaintiff "is ongoing."

37. Les's handwritten notes document direct communications with private investigators concerning Plaintiff's movements, telephone conversations, and activities inside her residence. On May 23, 2025, at approximately 2:09 p.m., Les asked an investigator where he should position himself after Plaintiff entered her home. At 2:12 p.m., the investigator responded that he could see through Plaintiff's patio door if the blinds were open. Later that evening, Les's notes record that Pat Burke photographed Plaintiff inside her kitchen at approximately 9:30 p.m. while Les was speaking with her by telephone. On May 15, 2025, Les informed an investigator

identified as Nate that he had been speaking with Plaintiff from 2:19 p.m. until 2:52 p.m., adding that the information was for the investigator's awareness. Nate acknowledged the message, and Les referred to receiving photographs. Additional notes dated May 16, 20, and 24 document Les comparing Plaintiff's statements during telephone conversations with investigators' observations, including whether she was outside with her dog and whether she was speaking on her phone to someone other than Les. These entries describe contemporaneous coordination between Les and investigators monitoring Plaintiff without her knowledge.

38. Les's handwritten notes document a coordinated surveillance operation involving multiple private investigators, extended daily shifts, photographs, and detailed reports of Plaintiff's activities at and around her Schaumburg residence. Notes dated April 8, 2025, headed "April 8th Pat 2 Guys," describe two investigators following Plaintiff, beginning with her entering her vehicle at approximately 8:01 a.m. Notes dated March 11, 2025, headed "Pat 7–10pm," contain the instruction "ADD THIS TO MARCH 11TH PER PAT," followed by observations of lights behind closed blinds and Plaintiff outside in her pajamas. During May 16–26, 2025, Les's notes identify investigators including Pat, Jose, and Nate working overlapping or successive shifts covering portions of the day from approximately 7:00 a.m. to 10:00 p.m. Their reported observations included Plaintiff's clothing, movements around her patio and doorway, dog-walking activities, telephone use, and items placed in her trash. On May 23, Les's notes describe an investigator photographing Plaintiff while she used her phone and record Les's observation: "FaceTime on phone for sure!! Can c it on her phone!! Can't c who though!!" Plaintiff denies participating in the alleged FaceTime conversation and disputes the basis for this characterization. Plaintiff questions how investigators could distinguish a FaceTime conversation from watching a video, viewing photographs, texting, or other ordinary phone activity. The

available materials do not establish that investigators could see the contents of her phone screen or otherwise reliably identify the application she was using. Plaintiff alleges that Les treated an unverified interpretation as established fact. When Les expressed distrust of Plaintiff, an investigator responded: "That's why we are here Les. To c what she's up to." The notes and investigator materials reflect an ongoing exchange of directions, observations, and responses. Les directed aspects of the surveillance, and investigators reported details extending beyond Plaintiff's whereabouts to her clothing, appearance, activities, and interactions. According to Cindy Longnecker's account, Les repeatedly discussed those observations with her and scrutinized ordinary personal choices. Plaintiff alleges that Les used the information to subject her daily life to continuing scrutiny and control. These records describe repeated, coordinated monitoring of Plaintiff's daily life rather than an isolated investigative encounter.

39. On May 26, 2025, Les's handwritten notes record his communication with an investigator identified as Jose concerning Plaintiff's plans and movements. After noting what Plaintiff had told him about her activities that day, Les wrote, "thats what she said, but who knows kp close tabs tdy." Jose responded, "ok I will." This exchange documents Les directing an investigator to monitor Plaintiff's activities and compare them with what she had told him. Separately, Cindy Longnecker reported that Les told her private investigators had monitored Plaintiff and her daughter at an airport, with one investigator positioned inside the baggage-claim area and another outside. Les told Ms. Longnecker that the investigators had "lost" Plaintiff at the airport. Ms. Longnecker did not personally witness the airport surveillance or view a photograph of the incident. How the investigators learned of Plaintiff's travel arrangements has not been established.

40. Les's handwritten notes dated July 14, 2025, document detailed monitoring of Plaintiff while she traveled in the Ford Bronco Raptor. The notes record Plaintiff leaving at approximately 8:05 a.m., followed by the entry "Put recorder in Raptor." Another entry refers to Les having "heard" activity involving Plaintiff's phone while she was seated in the garage that morning. The notes then trace Plaintiff's drive to an appointment in Geneva, Illinois, identifying roads, tollway locations, street addresses, and the destination suite number, together with observations of Plaintiff inside the vehicle. The notes contain a circled instruction, "Get recorder," and a subsequent reference to at least 20 minutes of recording. At approximately 12:01 p.m., an investigator reported that Plaintiff had left her appointment, and Les responded that her vehicle had just started. Additional notes from May 23, 2025, document vehicle-start and stop times, including an entry that the vehicle was turned off at a hardware store and another recording "vehicle off at 2:08pm" upon Plaintiff's return home. These entries reflect detailed knowledge of Plaintiff's movements and vehicle operation, as well as references to concealed audio recording, without Plaintiff's knowledge or consent.

41. Les provided Plaintiff with a Ford Bronco Raptor for her exclusive use when it was obtained from the dealership, and Plaintiff alone drove it. Les referred to Plaintiff in text messages as his "bronco raptor lady." Plaintiff's Ford Escape, which her daughter drove, was titled in Plaintiff's name. On July 14, 2025, while Plaintiff was attending an appointment in Geneva, Illinois, a vehicle-tracking application displayed on Les's phone showed the Bronco Raptor's vehicle identification number, a map placing the vehicle at the appointment location, and the status notations "Vehicle off" and "No Driver Assigned." The application display, together with Les's contemporaneous notes documenting Plaintiff's route and vehicle status, supports the allegation that he had access to location and vehicle-status information concerning

the Bronco Raptor without Plaintiff's knowledge. The precise tracking system, account permissions, and means by which Les obtained that information remain to be established. Les's notes also record that on May 19, 2025, he told an investigator watching Plaintiff's residence, "I will kp a eye on Raptor."

42. Les monitored Plaintiff's activities through transaction information available from a credit card on which he had made her an authorized user. Cindy Longnecker reported that Les reviewed the card's transaction records to determine where Plaintiff had made purchases and used that information in monitoring her activities. Plaintiff also recalls an occasion when she paid for dinner using a different payment method rather than the credit card, and Les became upset because the transaction did not appear in the account information available to him. These incidents support Plaintiff's allegation that Les used access to financial transaction information as another means of monitoring her activities without her knowledge or consent.

G. Les used claims of violence to make Plaintiff afraid.

43. On April 8, 2024, Les sent Plaintiff a text message stating: “Ya know i did 6 f***n tours, killd 52 of the worst pepole alive, was NEVER afraid or lonely thru all of it.” On November 6, 2025, in Ms. Longnecker's presence, Les told Plaintiff: “If you f*** with my FFL, you better watch out.” Plaintiff alleges that these statements, considered in the context of the parties' relationship and the surveillance described above, contributed to her fear of confronting Les and seeking assistance.

44. As Plaintiff discovered additional concealed recording devices and learned the extent of Les's surveillance activities, the statements described above intensified her fear for her personal safety. Plaintiff feared that Les possessed both the means to monitor her activities and

the capacity to act on his threats. These circumstances undermined Plaintiff's sense of security and made confronting Les or seeking assistance more difficult.

H. Plaintiff discovered additional recording evidence in August and December 2025.

45. In July 2024, Plaintiff suspected that she was being followed and reported her concerns to the Schaumburg Police Department. Plaintiff asked Les whether he had arranged for anyone to follow her, and he denied doing so. At that time, Les had been making payments to private investigator Pat Burke since April 8, 2024, as documented in Paragraph 11. Although Plaintiff discovered concealed tracking devices and voice recorders in vehicles in July 2024, those discoveries did not reveal that Les had retained private investigators. Plaintiff first learned of the private-investigator operation in August 2025, when Cindy Longnecker described Les's coordination with investigators and his review of their reports. On September 1, 2025, Plaintiff personally discovered the investigative reports, folders, and mailers at the Port Byron residence, as described in Paragraph 12. Before that time, Plaintiff did not know that Les had retained investigators to surveil her, direct their activities, and receive reports concerning her movements, personal activities, and interactions with others, or the extent of the workplace and residential recording activities. Plaintiff did not discover the two recorders in the vehicle trunk or personally hear the bathroom audio until December 26, 2025.

46. Between August 14 and August 24, 2025, Plaintiff learned of additional concealed recording devices at her workplace, in the Ford Bronco Raptor she drove, and in her bedroom. Cindy Longnecker's disclosures about Les's equipment purchases, listening to recordings, detailed note-taking, and communications with private investigators further informed Plaintiff of the scope of the alleged operation.

47. To Plaintiff's and Ms. Longnecker's knowledge, Les did not ask either of them about the removal or disappearance of the recording devices discovered at the Company office, in Plaintiff's vehicle, or in her bedroom. Neither was aware of Les reporting those devices missing.

I. None of this was preparation for litigation.

48. Les began paying private investigator Pat Burke on April 8, 2024, and Plaintiff discovered concealed AirTags in her purse and vehicle before the parties married on June 8, 2024. At that time, the parties were preparing to marry, and no legal dispute, claim, or proceeding between them was pending. These events establish that the payments to the investigator and the concealed tracking devices predated any litigation between the parties.

49. The investigative report identifies January 22, 2025, as the date the surveillance assignment concerning Plaintiff was ordered and identifies Les as the client. Four days later, on January 26, Plaintiff visited Les at the Port Byron residence, and the parties reconciled. At that time, no legal proceeding between the parties had been filed or threatened to Plaintiff's knowledge. The report's order date therefore places the renewed surveillance assignment immediately before the parties' reconciliation.

50. The recording and surveillance conduct described in Sections D and E includes incidents documented between February and August 2025, while the parties were reconciled and, beginning in late May 2025, living together as spouses at the Port Byron residence. The precise date on which the bathroom audio described in Paragraph 29 was recorded has not been established. Plaintiff's YouTube watch history and identification of the podcast audible in the recording provide evidence relevant to determining when it may have been captured, but do not independently establish the recording date.

51. Before Plaintiff filed her petition for dissolution of marriage on September 9, 2025, neither party had filed, and to Plaintiff's knowledge neither party had threatened, a legal proceeding against the other. The surveillance and recording conduct described above began before the marriage and continued during the parties' reconciliation in 2025, including surveillance ordered on January 22, 2025, four days before the parties reconciled. Substantial portions of the documented surveillance and alleged recording activity therefore preceded the filing of any dissolution proceeding. Plaintiff alleges that this chronology, together with the evidence of concealed recording devices, detailed handwritten logs, investigator communications, and monitoring of her private activities, supports her contention that the conduct was undertaken to monitor her rather than in response to pending litigation. Les subsequently pursued a separate dissolution proceeding in 2026.

52. In sworn discovery responses served December 16, 2025, in Rock Island County Case No. 25OP1477, Les identified private investigator Pat Burke but asserted that Burke had been retained to investigate Plaintiff's former boyfriend because Plaintiff allegedly requested and consented to that investigation, and to assist one of Les's coworkers. Plaintiff categorically denies ever requesting or authorizing such an investigation. In response to Interrogatory No. 2, which expressly requested the total amount paid to each investigator, Les stated, "Nothing was paid." In the same discovery responses, Les answered "None" when asked to describe surveillance conducted by him or on his behalf concerning Plaintiff (Interrogatory No. 3), tracking devices placed on property used by Plaintiff or her daughter (No. 4), persons involved in surveillance (No. 18), handwritten notes documenting Plaintiff's activities (No. 19), financial accounts used to pay for surveillance or investigations (No. 23), and recording devices placed or used to monitor Plaintiff or her daughter (No. 27). These responses are materially inconsistent

with canceled checks identifying 43 payments to Pat Burke totaling $214,768.75, investigative reports identifying Les as the client and Plaintiff as the surveillance subject, handwritten surveillance logs, photographs of recording equipment, and concealed devices discovered at the Company office, the marital residence, and in vehicles used by Plaintiff and her daughter. Plaintiff alleges that Les's sworn responses materially misrepresented the existence, purpose, financing, and extent of the surveillance activities described in this Complaint.

53. The surveillance and recording activities described in this Complaint included monitoring Plaintiff's private conversations, bedroom, bathroom, workplace, and personal movements. Illinois law provides for dissolution based on irreconcilable differences and directs that marital property be divided without regard to marital misconduct. 750 ILCS 5/401(a); 750 ILCS 5/503(d). The intimate and private activities monitored by Les were not, merely by virtue of their private nature, relevant to establishing grounds for dissolution or determining the division of marital property. Plaintiff alleges that the nature, scope, and timing of the surveillance, including its commencement before any dissolution proceeding, are inconsistent with an explanation that the conduct was undertaken solely to prepare for divorce litigation.

54. To Plaintiff's knowledge, Les has not offered the concealed audio recordings, handwritten transcripts, or private-investigator surveillance reports concerning Plaintiff as evidence in the parties' judicial proceedings. During the plenary hearing in Plaintiff's order-of-protection case, Les was called as a witness and, according to Plaintiff's recollection, invoked his Fifth Amendment privilege against self-incrimination in response to every substantive question concerning the allegations, answering only questions identifying himself. Plaintiff is unaware of Les presenting any of the surveillance materials described in this Complaint as evidence supporting a legitimate litigation purpose.

J. The surveillance continued after Plaintiff filed for divorce.

55. Les continued making payments to private investigator Pat Burke after Plaintiff filed for dissolution of marriage on September 9, 2025. Canceled checks identify four payments totaling $8,214.00 after that filing, including two checks totaling $6,721.00 dated after Plaintiff initiated order-of-protection proceedings on November 6, 2025. The last identified check is dated January 15, 2026. These payments occurred after the commencement of litigation between the parties, although the particular services, if any, associated with each payment have not yet been established because the underlying investigator invoices and assignments have not been obtained. After the order of protection was entered, Investigator Brent A. Mendoza of the Rock Island County Sheriff's Office informed Plaintiff, as she recalls, that he had contacted The Robison Group, advised the firm of the active order of protection against Les, and instructed it to discontinue surveillance of Plaintiff. Plaintiff further recalls Investigator Mendoza stating that the firm acknowledged his instruction.

56. On November 11 and 12, 2025, Plaintiff attempted to establish a secure mailing address because she was concerned that Les had been taking or withholding her personal mail. The post office was closed for Veterans Day on November 11, and Plaintiff returned on November 12, when she opened a post office box. Les's November 2025 calendar contains entries documenting Plaintiff's post-office visits on those dates, after she had obtained an emergency order of protection against him. Plaintiff had not informed Les of either visit. These entries indicate that Les possessed information about Plaintiff's movements while she was attempting to protect her private correspondence. How he obtained that information remains unknown.

57. On November 6, 2025, Les made the threatening statement concerning his federal firearms license described in Paragraph 43, which Cindy Longnecker heard. Plaintiff reported the statement to the Le Claire Police Department on November 19, 2025. Ms. Longnecker possessed firsthand knowledge of concealed recording devices and surveillance-related activities at the Company office. On the morning of December 19, 2025, Les terminated Ms. Longnecker's employment. Later that day, at approximately 1:19 p.m., Ms. Longnecker personally accepted delivery of a certified-mail subpoena requiring her testimony in Plaintiff's order-of-protection proceeding. USPS tracking records confirm delivery to an individual at her location at that time, and Ms. Longnecker identifies herself as the recipient. She subsequently testified on December 23, 2025.

58. On December 26, 2025, Plaintiff discovered the two digital voice recorders described in Paragraph 29 in the trunk of a car parked in the garage at the Port Byron residence. Alongside the recording devices were papers containing Plaintiff's personal identification documents and mail addressed to her former Schaumburg residence. Plaintiff had not authorized Les to take, retain, or withhold her personal correspondence or identification documents.

K. Harm to Plaintiff.

59. Discovering concealed recording devices in her bedroom, vehicle, and workplace, hearing audio captured during her private bathroom activities, and learning that Les had listened to recordings and maintained detailed notes concerning her activities caused Plaintiff severe emotional distress. Plaintiff became afraid to speak freely in her home or workplace because she could not know whether additional recording devices remained concealed. She and Cindy Longnecker began communicating through text messages, even while working near each other, to avoid the possibility that their private conversations were being recorded.

60. Following the August 2025 discoveries, Plaintiff became increasingly fearful in her own home. She avoided speaking with Les unless another person was present and, after returning from work, frequently retreated to her bedroom with her two dogs, leaving only when necessary. At times, she remained there despite being hungry because she was afraid to leave. Uncertain whether additional recording devices remained concealed, Plaintiff also stopped speaking freely on the telephone. She experienced stomach upset, difficulty eating and sleeping, episodes of waking in panic, exhaustion, and impaired concentration.

61. Plaintiff's fear extended to the safety and privacy of her daughter, whose vehicle had also been subjected to concealed tracking and recording devices. Plaintiff's daughter's father died of brain cancer in 2020, leaving Plaintiff as her daughter's only surviving parent. Because Plaintiff could not be certain that the surveillance had ended or that her daughter would be safe from further monitoring, Plaintiff avoided seeing her daughter in person for almost a year and restricted the information she shared with her out of concern that their communications or activities could be monitored. For the first time in her daughter's life, Plaintiff spent the holidays apart from her. This separation was particularly painful given the family's prior loss and their longstanding tradition of spending holidays together. The prolonged separation, loss of family contact, and inability to communicate freely caused Plaintiff substantial emotional distress and interfered with her relationship with her daughter.

62. Plaintiff sought assistance from a therapist experienced in treating survivors of domestic abuse, contacted a domestic violence hotline, and met with a domestic violence advocate at the courthouse. Even after Les was ordered to leave the residence, Plaintiff maintained an escape plan, kept the lights on overnight because the secluded 17-acre property was dark and approaching persons could not readily be seen from the windows, slept with her

conversations, personal relationships, and personal history had been subjected to extensive scrutiny and documentation without her knowledge or consent. Activities that Plaintiff reasonably believed were private had been observed, recorded, interpreted, and cataloged by others. Plaintiff does not know the full extent of the recordings and surveillance materials, who may have listened to or viewed them, whether they were copied, disclosed, or distributed to others, or where the recordings, photographs, reports, and information obtained through the surveillance are presently stored or maintained. The inability to know what information was collected, how it was characterized, or who may possess it continues to cause Plaintiff substantial emotional distress, humiliation, and a lasting loss of personal security and dignity.

L. Timeliness.

64. The conduct alleged in this Complaint occurred at different times and was discovered by Plaintiff in stages. The July 2024 vehicle-recording discoveries were distinct from the additional surveillance, workplace and residential recording activities, and private-investigator operation that Plaintiff learned about in 2025. Plaintiff alleges that she did not discover the full nature and extent of the later conduct when the earlier devices were found. The dates and circumstances of her discoveries are described in the preceding factual allegations and are relevant to determining when her individual claims accrued.

65. When the parties reconciled in January 2025, Plaintiff did not know that Les had ordered renewed private-investigator surveillance or that additional concealed recording devices would be discovered in her workplace, vehicle, and bedroom. Plaintiff learned of the additional devices and the private-investigator operation in stages beginning in August 2025. She did not discover the two recorders found in a vehicle trunk or personally hear the bathroom audio described in Paragraph 29 until December 26, 2025. Plaintiff alleges that the concealed nature of

the conduct and the circumstances of these discoveries prevented her from learning the full extent of the 2025 surveillance when she discovered the earlier devices in 2024.

COUNT I — Illinois Eavesdropping Act, 720 ILCS 5/14-2 and 5/14-6 (Against Les Baer Sr.)

66. Plaintiff incorporates paragraphs 1 through 65.

67. Les knowingly and surreptitiously used concealed recording devices to overhear or record Plaintiff's private conversations in Illinois without the consent of the participants. The alleged conduct included recording equipment concealed in Plaintiff's BMW in July 2024 and additional devices used during 2025 at the Port Byron residence and in the Ford Bronco Raptor Plaintiff drove, including a device that Les's handwritten notes indicate he placed in the Bronco on July 14, 2025. Plaintiff further relies on audio she personally heard from one recovered recorder, together with handwritten notes containing purported transcriptions that were physically secured to that recorder with a rubber band when discovered in the vehicle trunk, as evidence of recording or overhearing rather than merely possession of recording equipment. The workplace recorders discovered, secured, and reported to police in Iowa are separately alleged as part of the broader course of surveillance and are not relied upon as independent Illinois recording incidents under this Count.

68. Plaintiff reasonably expected that her private conversations inside her vehicle and at the Port Byron residence would not be secretly recorded or overheard by persons who were not participants in those conversations. Plaintiff did not consent to Les's concealed recording or interception of those communications, including conversations in which Les was not a participant.

69. Les maintained detailed handwritten logs containing statements attributed to Plaintiff, elapsed-time counters measured in minutes and seconds, descriptions of sounds and

activities, and references to operating or retrieving recording devices. Notes dated February 21–23 and April 4, 2025 contain entries consistent with listening to and transcribing audio; other notes refer to recorder operation and retrieval. Photographs show Olympus digital recorders labeled with residential locations and dates. Plaintiff expressly disputes the accuracy of purported conversations attributed to her in Les's notes, including purported conversations with other persons that Plaintiff states never occurred. Plaintiff relies on the notes as evidence of Les's apparent listening, transcription, and surveillance practices, not as proof that the attributed statements were spoken or that the purported conversations actually occurred. Plaintiff recovered only a limited portion of the apparent surveillance materials; the extent and present disposition of additional recordings, devices, or copies remain unknown.

70. As a direct result, Plaintiff suffered the harm described in paragraphs 59 through 63.

WHEREFORE, Plaintiff requests judgment against Les Baer Sr. for actual damages in an amount to be determined at trial, punitive damages as authorized by 720 ILCS 5/14-6, an injunction against further eavesdropping on Plaintiff, costs, and such other relief as is just.

COUNT II — Intrusion Upon Seclusion, Illinois (Against Les Baer Sr.)

71. Plaintiff incorporates paragraphs 1 through 65.

72. During 2025, Les intentionally intruded upon Plaintiff's seclusion and private affairs in Illinois through the placement and use of concealed recording devices in residential spaces, including Plaintiff's bedroom, and in vehicles she used; the recording of Plaintiff's private bathroom activities, including while she showered; the monitoring of private conversations and activities within the Port Byron residence; and the use of private investigators to observe and

document Plaintiff's activities. These intrusions occurred without Plaintiff's knowledge or consent and involved spaces and activities in which she reasonably expected privacy.

73. Plaintiff maintained a reasonable expectation of privacy in her bedroom, bathroom, personal conversations, and other private activities within the marital residence and vehicles she used. Her marriage to Les and their shared occupancy of the residence did not constitute consent to concealed recording, surveillance, or monitoring of her private affairs.

74. The alleged intrusions would be highly offensive to a reasonable person. The conduct involved concealed recording devices placed in private residential spaces and vehicles, repeated monitoring over an extended period, and detailed handwritten documentation of Plaintiff's personal activities and purported conversations. Les also used information obtained through surveillance, private-investigator reports, and Plaintiff's credit-card transactions to scrutinize her movements, compare her statements against information gathered without her knowledge, and evaluate her truthfulness. Plaintiff alleges that this systematic monitoring of her ordinary daily activities, private communications, and personal relationships was profoundly intrusive, humiliating, and degrading. The nature, duration, concealment, and scope of the conduct constituted a substantial invasion of Plaintiff's personal privacy and dignity.

75. As a direct and proximate result of the alleged intrusions, Plaintiff suffered severe emotional distress, humiliation, loss of personal dignity, fear for her safety and privacy, disruption of family relationships, and the continuing psychological and practical harms described in Paragraphs 59 through 63.

WHEREFORE, Plaintiff requests judgment against Les Baer Sr. for compensatory damages in an amount to be determined at trial, punitive damages, costs, and such other relief as is just.

COUNT III — Intrusion Upon Seclusion, Iowa (Against Les Baer Sr. and Les Baer Custom, Inc.)

76. Plaintiff incorporates paragraphs 1 through 65.

77. During 2025, at the offices of Les Baer Custom, Inc., in Le Claire, Iowa, Les intentionally intruded upon Plaintiff's private affairs through the concealment and use of recording equipment in the shared cubicle area adjoining Plaintiff's assigned workstation. Cindy Longnecker discovered two separate concealed recorders on different dates, including a second recorder found in the same location after the first had been removed. Les was not present in the office when the concealed workplace recorders were recovered. Plaintiff alleges that the devices were used to monitor private conversations occurring near her workstation without her knowledge or consent. The intrusion also included Plaintiff's personal mail and financial correspondence being obtained and retained without her authorization and kept at the offices of Les Baer Custom, Inc., as described in Paragraph 34.

78. Plaintiff reasonably expected that her private conversations at her assigned workstation would not be secretly recorded or monitored. The office had no separate break room, so Plaintiff and Ms. Longnecker ate, took breaks, and held personal conversations at their workstations, and when Les was absent they discussed private matters they did not intend or expect him or others to overhear (Paragraph 30). Plaintiff also maintained a reasonable expectation of privacy in her personal mail and financial correspondence, which was addressed to her and kept at the Company office without her knowledge or permission (Paragraph 34). Neither Plaintiff's employment at the Company nor her use of a shared office space constituted consent to concealed surveillance or to the retention of her private correspondence. The intrusions would be highly offensive to a reasonable person.

79. Plaintiff began working full time for Les Baer Custom, Inc. in June 2025, at a workstation adjoining the shared cubicle partition where the concealed recorders were later discovered. Les is the Company's president, secretary, treasurer, and director and directs its daily operations (Paragraph 6). The conduct described in this Count took place on Company premises and involved Company personnel, both before and after Plaintiff's full-time employment began. Les directed Cindy Longnecker, the Company's office manager, while she was performing her employment duties, to purchase recording and surveillance-related equipment and to help activate Apple AirTags (Paragraph 32). During his working day at the Company office, Les listened to recordings concerning Plaintiff, reviewed surveillance-related materials, and communicated with private investigators (Paragraph 33). He kept recording devices, handwritten notes, and Plaintiff's personal mail and financial correspondence at the Company office (Paragraphs 25, 33, and 34). In doing so, Les acted through his authority as the Company's officer and director and, from June 2025 forward, as Plaintiff's employer. Plaintiff alleges that Les Baer Custom, Inc. is responsible under applicable Iowa law for the conduct described in this Count.

80. As a direct and proximate result of the alleged workplace intrusions and unauthorized retention of her private correspondence, Plaintiff suffered emotional distress, humiliation, loss of privacy and personal dignity, fear of continued monitoring, and the additional harms described in Paragraphs 59 through 63.

WHEREFORE, Plaintiff requests judgment against Les Baer Sr. and Les Baer Custom, Inc., jointly and severally, for compensatory damages in an amount to be determined at trial, punitive damages, costs, and such other relief as is just.

COUNT IV — Intentional Infliction of Emotional Distress (Against Les Baer Sr.)

81. Plaintiff incorporates by reference Paragraphs 1 through 65 of this Complaint as though fully set forth herein.

82. Beginning before the parties' marriage and continuing through multiple documented incidents during 2024 and 2025, Les engaged in a course of covert surveillance and monitoring of Plaintiff. The conduct included concealed recording devices in vehicles, residential spaces, and the workplace; electronic tracking; private-investigator surveillance; and detailed handwritten records of Plaintiff's activities and purported conversations. Additional surveillance-related evidence was discovered after August 2025, and payments to private investigator Pat Burke continued into January 2026. Plaintiff alleges that the combined conduct constituted a prolonged and systematic intrusion into her private life.

83. Plaintiff alleges that Les's conduct was extreme and outrageous in its nature, duration, concealment, and invasiveness. The alleged conduct subjected Plaintiff's private conversations, personal movements, residential activities, and relationships to repeated scrutiny without her knowledge or consent. Les allegedly used information obtained through recordings, investigators, and financial transactions to monitor Plaintiff's behavior and evaluate her truthfulness. Plaintiff experienced the combined monitoring as an encompassing network of surveillance in which ordinary aspects of her life were scrutinized as though she were under a covert criminal investigation. Plaintiff further alleges that the secret documentation of her private life, including bathroom activities, and the uncertainty concerning who may possess or have accessed the resulting materials were profoundly humiliating and degrading.

84. The alleged conduct was aggravated by Les's positions of trust and authority over Plaintiff. He was her husband and exercised authority over her employment through Les Baer Custom, Inc. Plaintiff alleges that Les exploited those relationships and the access they provided

COUNT V — Federal Wiretap Act, 18 U.S.C. §§ 2511 and 2520 (Against Les Baer Sr.)

87. Plaintiff incorporates paragraphs 1 through 65.

88. During 2025, Les intentionally intercepted oral communications of Plaintiff through the alleged use of concealed electronic recording devices, in violation of 18 U.S.C. § 2511(1)(a). The alleged interceptions involved private communications at the Port Byron residence in Illinois, in vehicles used by Plaintiff, and at her assigned workstation at Les Baer Custom, Inc., in Le Claire, Iowa. The recording activities included two concealed digital voice recorders discovered at Plaintiff's Iowa workplace in August 2025 and audio recovered from a separate recorder in December 2025 that Plaintiff personally recognized as capturing her private bathroom activities at the Port Byron residence, including her own voice speaking to her dogs. Additional evidence includes digital voice recorders labeled with recording dates and locations, handwritten notes containing elapsed-time counters and purported transcriptions, and references to the operation, replacement, retrieval, and review of recordings. Plaintiff alleges that Les used concealed recording equipment to acquire private communications without her knowledge or consent, including communications in which he was not a participant. Plaintiff expressly disputes the accuracy of purported conversations attributed to her in Les's handwritten notes.

89. Plaintiff made private oral communications under circumstances in which she expected those communications would not be intercepted, and that expectation was reasonable. These circumstances included conversations within private areas of the Port Byron residence and personal conversations at her assigned workplace workstation, including conversations with Cindy Longnecker when Les was absent. Plaintiff did not know that concealed recording devices had been placed in those locations and did not consent to their use. Plaintiff alleges that the nature of these conversations, their locations, and the circumstances in which they occurred justified her expectation that they would not be secretly intercepted.

90. Plaintiff alleges that Les knowingly used information obtained through concealed recording activities to monitor, scrutinize, and exercise control over her personal affairs. His alleged use included preparing handwritten accounts of purported conversations, comparing Plaintiff's statements against recorded and investigator-supplied information, and repeatedly reviewing and discussing purported recording contents. According to Cindy Longnecker's firsthand account of conversations with Les, he repeatedly described what he claimed to have heard on concealed recording devices, including purported conversations involving Plaintiff and unidentified males, recurring sounds captured by the devices, and his plans to listen to additional recordings. Les also discussed changing and retrieving recording devices. Plaintiff expressly disputes the accuracy of the conversations Les attributed to her. Plaintiff alleges that Les knowingly communicated purported recording contents to Cindy, who was not a participant in the alleged recorded conversations. Plaintiff further alleges, on information and belief, that Les exchanged surveillance information with private investigators and others. The extent to which those additional exchanges included intercepted oral communications remains to be established. Plaintiff alleges that Les intentionally used and disclosed the contents of unlawfully intercepted oral communications, knowing or having reason to know that the communications had been obtained through concealed recording devices operated without Plaintiff's knowledge or consent, in violation of 18 U.S.C. § 2511(1)(c) and (d).

91. Plaintiff alleges that her oral communications were unlawfully intercepted as described in this Count and that she is entitled to pursue the civil remedies authorized by 18 U.S.C. § 2520, including applicable damages and other relief provided by law.

WHEREFORE, Plaintiff requests judgment against Les Baer Sr. for the greater of her actual damages or statutory damages under 18 U.S.C. § 2520(c)(2), punitive damages,

reasonable attorney's fees and litigation costs as authorized by 18 U.S.C. § 2520(b)(3), and such other relief as is just.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury on all issues so triable.

## EQUITABLE RELIEF REQUESTED ON ALL COUNTS

Under 18 U.S.C. § 2520(b)(1), 720 ILCS 5/14-6 to the extent applicable, and other applicable law, Plaintiff further requests appropriate equitable relief, including orders that:

(a) Require Defendants and persons acting in concert with them who are subject to the Court's authority to preserve, without alteration or deletion, all recordings, copies, transcripts, handwritten logs, photographs, investigator reports, tracking data, communications, metadata, storage records, and related materials concerning Plaintiff, pending lawful collection, examination, and resolution of this action;

(b) Require Defendants, through appropriate discovery and any further relief authorized by law, to identify the persons and entities who created, received, possessed, accessed, listened to, viewed, copied, transferred, stored, or disclosed such materials; identify known current and former custodians, storage locations, accounts, devices, and repositories; and account for known transfers, copies, and dispositions, without requiring Defendants to certify facts beyond their knowledge or control;

(c) Prohibit Defendants and persons acting in concert with them who are subject to the Court's authority from further accessing, using, distributing, or disclosing the materials except as necessary for lawful preservation, discovery, court proceedings, or as otherwise ordered by the Court;

(d) After all preservation, forensic examination, discovery, evidentiary, appellate, and other applicable legal obligations have been satisfied, direct the return, deletion, or destruction of unlawfully obtained materials and copies within the possession, custody, or control of persons subject to the Court's authority, under an appropriate court-approved protocol, with sworn certifications of compliance; and

(e) Prohibit further unlawful recording, tracking, or surveillance of Plaintiff by Defendants and persons acting in concert with them who are subject to the Court's authority.

Respectfully submitted,

s/ Kathleen Martha Moon
Kathleen Martha Moon, Plaintiff, self-represented
Las Vegas, Nevada
(773) 629-9776 · kathleenmmoon@gmail.com
Date: November 6, 2026